T.C. Memo. 2015-43

UNITED STATES TAX COURT

BALSAM MOUNTAIN INVESTMENTS, LLC, BALSAM MOUNTAIN
MANAGEMENT COMPANY, LLC, f.k.a. BALSAM MOUNTAIN COMPANY,
LLC, TAX MATTERS PARTNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20545-11.                          Filed March 12, 2015.

In 2003 B, a partnership, granted a perpetual conservation easement on a 22-acre parcel of land to a nonprofit corporation. For the next five years B had the right to change the boundaries of the restricted area. B's right to change the boundaries was subject to the following conditions. First, the total area restricted by the easement had to remain 22 acres. Second, at least 95% of the original 22-acre parcel had to remain within the boundaries of the restricted area.

Held: The easement is not a "qualified real property interest" of the type described in I.R.C. sec. 170(h)(2)(C).

David Demoss Dahl and Bradley S. Wooldridge, for petitioner.

David M. McCallum and Matthew E. Epps, for respondent.

[*2]                           MEMORANDUM OPINION

MORRISON, Judge:  The respondent (referred to here as the "IRS") issued

a notice of final partnership administrative adjustment for the 2003 taxable year of

Balsam Mountain Investments, LLC (referred to here as "Balsam Investments").

The notice disallowed a charitable-contribution deduction for a perpetual

conservation easement and determined a penalty under section 6662.  (All

references to sections are to the Internal Revenue Code of 1986, as amended.)  We

have jurisdiction under section 6226(f).

The IRS filed a motion for partial summary judgment.  It contends that the

easement is not a "qualified real property interest" of the type described in section

170(h)(2)(C).  We grant the IRS's motion.

                              Background

The facts set forth below are based upon examination of the parties'

pleadings, moving papers, responses, and attachments.

In 2003, Balsam Investments executed a perpetual conservation easement

agreement with the North American Land Trust, a nonprofit corporation.  Under

the easement agreement, Balsam Investments and "its successors or assigns" were

restricted "in perpetuity" from developing or altering the land in the "Conservation

[*3] Area".  The "Conservation Area" was defined in the easement agreement as a specific 22-acre parcel of land in Jackson County, North Carolina, the exact boundaries of which were described in a plat attached to the easement agreement. At the time, Balsam Investments owned the 22-acre parcel of land.  Article 3.5 of the easement agreement reserved the right of Balsam Investments to make boundary changes to the "Conservation Area":

> 3.5 Owner [i.e., Balsam Investments] reserves the right to make minor alterations to the boundary of the Conservation Area if all of the following requirements are satisfied:
>
> > 3.5.1 The calculated area of land within the Conservation Area after alteration of the boundary of the Conservation Area shall not be reduced from that which was made subject to this Conservation Easement at the time this Conservation Easement was granted.
> >
> > 3.5.2 The land added to the Conservation Area shall be contiguous with and connected by an area of substantial width to the Conservation Area as it exists on the date of this Conservation Easement.
> >
> > 3.5.3.  The land added to the Conservation Area shall, in the Trust's [i.e., North American Land Trust's] reasonable judgment, be land which makes an equal or greater contribution to the Conservation Purposes than that which is removed from the Conservation Area.
> >
> > 3.5.4.  The aggregate land removed from the Conservation Area (and substituted with other contiguous land) as a result of all boundary line alterations shall not exceed five percent (5%)

**[*4]** of the area within the Conservation Area as of the date of this Conservation Easement.

3.5.5. No boundary line adjustments within the Conservation Area may be made under the provisions of this section after the fifth anniversary of the date of this Conservation Easement.

3.5.6. The proposed boundary lines shall be surveyed and proposed in survey plan form by Owner but shall be subject to the prior review and approval of the Trust.

3.5.7. The location and reconfiguration of a boundary of the Conservation Area shall not be approved by Trust if, in Trust's judgment, it would directly or indirectly result in any material adverse effect on any of the Conservation Purposes.

3.5.8. The new Conservation Area boundary shall be * * * set forth in a written amendment to this Conservation Easement * * *.

The term "Conservation Purposes" was defined in the easement agreement as (1) the preservation of the "Conservation Area" as a natural habitat, and (2) the preservation of the "Conservation Area" as open space.

In 2004 Balsam Investments filed a Form 1065, U.S. Return of Partnership Income, for its 2003 taxable year. It reported its grant of the conservation easement as a charitable-contribution deduction.[1] In 2006 Balsam Investments

---

[1]Although a deductible charitable contribution by a partnership is reported on the partnership's return, such a contribution does not affect the partnership's taxable income. Secs. 703(a)(2)(C), 6031(a); sec. 1.703-1(a)(1) and (2), Income Tax Regs. Rather, it affects the partners' taxable income. See sec. 702(a).

**[*5]** dissolved.  In 2011 the IRS issued its partners a notice of final partnership administrative adjustment for 2003.  The notice disallowed the charitable-contribution deduction and asserted a section-6662 penalty.  In 2011 the tax matters partner filed a timely petition challenging the notice under section 6226(a).  The tax matters partner was Balsam Mountain Management Co., LLC (referred to here as "Balsam Management").  Its principal office was in North Carolina at the time the petition was filed.

## Discussion

Tax Court Rule of Practice and Procedure 121(a) provides that either party may move for summary judgment upon all or any part of the legal issues in controversy.  Full or partial summary judgment may be granted only if it is demonstrated that no genuine dispute exists as to any material fact and that the issues presented by the motion may be decided as a matter of law.  See Tax Ct. R. Pract. & Proc. 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).  As to whether the easement granted by Balsam Investments is a "qualified real property interest" of the type described in section 170(h)(2)(C), we conclude that there is no genuine dispute as to any material fact and that the easement is not such an interest as a matter of law.

**[\*6]**  The value of any charitable contribution made during the taxable year is allowed as a deduction.  Sec. 170(a)(1).  If the charitable contribution is of a partial interest in property--"an interest in property which consists of less than the taxpayer's entire interest in such property"--the Code allows a deduction only in limited circumstances.  Id. subsec. (f)(3).  One such circumstance exists if the contributed interest is a "qualified conservation contribution."  Id. subpara. (B)(iii).  A "qualified conservation contribution" is defined by section 170(h)(1).  Section 170(h)(1) provides:

> (1)  In general.--For purposes of subsection (f)(3)(B)(iii), the term "qualified conservation contribution" means a contribution--
>
>> (A) of a qualified real property interest,
>>
>> (B) to a qualified organization,
>>
>> (C) exclusively for conservation purposes.

Section 170(h)(2) provides:

> (2)  Qualified real property interest.--For purposes of this subsection, the term "qualified real property interest" means any of the following interests in real property:
>
>> (A) the entire interest of the donor other than a qualified mineral interest,
>>
>> (B) a remainder interest, and

**[\*7]**              (C) a restriction (granted in perpetuity) on the use which
may be made of the real property.

The IRS contends that the easement Balsam Investments granted to the

North American Land Trust is not a "qualified real property interest" of the type

described in section 170(h)(2)(C) and, therefore, is not a "qualified conservation

contribution."  Balsam Management contends that the easement is a "qualified

conservation contribution" because it is a "qualified real property interest" of the

type described in section 170(h)(2)(C).

We hold that the easement is not a "qualified real property interest" of the

type described in section 170(h)(2)(C).  Belk v. Commissioner, 140 T.C. 1, 10-11

(2013), supplemented by T.C. Memo. 2013-154, aff'd, 774 F.3d 221 (4th Cir.

2014), held that a conservation easement is not a "qualified real property interest"

of the type described in section 170(h)(2)(C) if the easement agreement permits

the grantor to change what property is subject to the easement.  This is because an

interest in real property is a "qualified real property interest" of the type described

in section 170(h)(2)(C) only if it is an interest in an identifiable, specific piece of

real property.[2]  See Belk v. Commissioner, 140 T.C. at 10.  The easement granted

_____

   [2]This reading of Belk is consistent with the Supplemental Memorandum
Opinion denying the taxpayers' motion for reconsideration of Belk.  See Belk v.
Commissioner, T.C. Memo. 2013-154, supplementing 140 T.C. 1 (2013), aff'd,

                                                            (continued...)

**[\*8]** by Balsam Investments permitted it to change the boundaries of the "Conservation Area". Therefore, the easement is not an interest in an identifiable, specific piece of real property. Under Belk, the easement is not a "qualified real property interest" of the type described in section 170(h)(2)(C).

Balsam Management contends that Belk v. Commissioner, 140 T.C. at 3-5, is distinguishable because the easement agreement in Belk allowed the donor to substitute other land for all of the land initially subject to the easement. By contrast, the easement granted by Balsam Investments allowed substitution for only 5% of the land initially subject to the easement. This makes the easement different from the one in Belk, but the difference does not matter. The easement granted by Balsam Investments in 2003 was not an interest in an identifiable, specific piece of real property. For five years after 2003 Balsam Investments could change the boundaries of the "Conservation Area" burdened by the

---

[2](...continued)
774 F.3d 221 (4th Cir. 2014). In the Supplemental Memorandum Opinion, we stated that the Court in the first Belk Opinion had "found that section 170(h)(2)(C) requires that taxpayers donate an interest in an identifiable, specific piece of real property." See id. at \*7-\*8.

The U.S. Court of Appeals for the Fourth Circuit held that the easement in Belk did not restrict a "defined and static parcel" of real property and, therefore, was not a "qualified real property interest" under sec. 170(h)(2)(C). Belk v. Commissioner, 774 F.3d at 227.

**[*9]** easement.  As of 2003 the easement did not constitute a "qualified real property interest" of the type described in section 170(h)(2)(C).

Alternatively, Balsam Management argues that we should overrule <u>Belk</u>. We decline to do so.

The easement is not a "qualified real property interest" of the type described in section 170(h)(2)(C).  Given the arguments presented, the easement is not a "qualified conservation contribution".

<u>An order will be issued granting respondent's motion for partial summary judgment</u>.